IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAHIR DURON,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | **AMENDED MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**<br><br>Case No. 2:19-cv-00523-RJS<br><br>Chief Judge Robert J. Shelby |

In December 2018, the court sentenced Plaintiff Jahir Duron to prison for forty-two months and one day after he pleaded guilty to illegally reentering the United States and admitted violating a condition of his supervised release. Duron, who is currently incarcerated and proceeding pro se, now challenges his sentence. Before the court is Duron's Motion to Vacate, Set Aside, or Correct Sentence brought under 28 U.S.C. § 2255.[1] For the following reasons, the court denies the Motion and dismisses the case.

## BACKGROUND

Duron was born in Honduras and is not a citizen of the United States of America.[2] He nevertheless has a criminal history that includes multiple illegal entries to—and subsequent removals from—the United States.[3] Specifically, Duron has been removed from the United States six times since 2009.[4]

---

[1] Dkt. 1.

[2] Case No. 2:18-cr-00388-RJS (hereinafter "388 Case"): dkt. 25 at 8.

[3] *See* 388 Case: dkt. 20 (SEALED) at 8–11.

[4] *Id.* (SEALED) at 10–11.

In addition to his removals, Duron has been convicted of felony crimes.[5] In 2013, Duron was convicted of a felony offense for possessing a controlled substance, and he was sentenced to two years in prison.[6] In 2016, in the District of Arizona, Duron was convicted of a felony offense for illegally reentering the country,[7] and he was placed on supervised release for three years.[8] As a term of his supervised release, the United States District Court for the District of Arizona (Arizona District Court) ordered Duron "not [to] re-enter the United States without legal authorization" if he was deported.[9] In December 2016, Duron was deported.[10]

Around May 2017, Duron was arrested in the District of Utah and returned to the District of Arizona.[11] There, in November 2017, the Arizona District Court revoked Duron's supervised release and committed him to the custody of the Bureau of Prisons for eight months.[12] The Arizona District Court further ordered that after his release from prison, Duron would be on supervised release for twenty-eight months with the same condition that, if he is deported, he "shall not re-enter the United States without legal authorization."[13] In February 2018, Duron was again deported.[14]

Despite these court orders, in August 2018, Duron was again found in the District of Utah[15] and was charged with illegal reentry.[16] Upon learning that Duron had been found and

---

[5] 388 Case: dkt. 25 at 8–9.

[6] *Id.* at 8.

[7] *Id.* at 9.

[8] *See* 388 Case: dkt. 20 (SEALED) at 9 ¶ 37.

[9] Case No. 2:18-cr-00413-RJS (hereinafter "413 Case"): dkt. 2-2 at 3.

[10] 388 Case: dkt. 20 (SEALED) at 9 ¶ 37.

[11] 413 Case: dkt. 2 at 5.

[12] 413 Case: dkt. 2-3 at 1.

[13] *Id.*

[14] 388 Case: dkt. 25 at 8.

[15] *Id.*

charged in Utah, the Arizona District Court transferred his supervised release violation to this court to be addressed with the illegal reentry charge.[17]

In December 2018, Duron pleaded guilty to the illegal reentry charge[18] and admitted his supervised release violation.[19] Before accepting Duron's guilty plea, the court reviewed Duron's rights with him and explained the relevant penalties.[20] Duron was also placed under oath and answered questions the court posed to him concerning his understanding of and willingness to enter into the plea agreement.[21] Satisfied that Duron understood and was voluntarily entering into the plea agreement, the court accepted Duron's guilty plea.[22]

In connection with changing his plea, Duron signed a Statement By Defendant in Advance of Plea of Guilty (the Plea Agreement).[23] In the Plea Agreement, Duron acknowledged and certified that he had been advised of and understood the facts and rights at issue in the Plea Agreement and that he "had the assistance of counsel in reviewing, explaining and completing" the Plea Agreement.[24] He also acknowledged that a conviction could result in "a term of imprisonment of up to 10 years" and that "the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining [his] sentence."[25] And after recognizing his right to challenge his sentence, Duron represented the following:

---

[16] 388 Case: dkt. 1.

[17] Case No. 2:18-cr-00413-RJS: dkt. 1.

[18] 388 Case: dkt. 19.

[19] 413 Case: dkt. 14.

[20] *See* 413 Case: dkt. 14; *see also* 388 Case: dkt. 19. Duron specifically pleaded guilty to illegally reentering the United States before Magistrate Judge Dustin B. Pead, who also conducted the colloquy regarding Duron's rights and willingness to enter into the guilty plea for that charge. *See* 388 Case: dkt. 19.

[21] *See* 413 Case: dkt. 14; *see also* 388 Case: dkt. 19.

[22] *See* 413 Case: dkt. 14, dkt. 15; *see also* 388 Case: dkt. 19, dkt. 22.

[23] 388 Case: dkt. 19, dkt. 25.

[24] 388 Case: dkt. 25 at 1.

[25] *Id.* at 1–2.

> I also knowingly, voluntarily and expressly waive my right to challenge my sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under Title 28, United States Code, Section 2255, except on the basis of ineffective assistance of counsel.[26]

Duron was represented by counsel when he signed the Plea Agreement, and his counsel also signed the Plea Agreement.[27] Additionally, Duron's counsel made the following representation in the Plea Agreement:

> I certify that I have discussed this Statement with the defendant, explained all the legal rights articulated herein, and I have assisted the defendant in completing this form. I believe that this plea is knowingly and voluntarily being entered with full knowledge of the defendant's legal rights and that there is a factual basis for the plea.[28]

After accepting Duron's guilty plea, the court sentenced him to thirty months imprisonment for his illegal reentry conviction[29] and twelve months and one day for his supervised release violation.[30] The court ordered the sentences run consecutively.[31]

In July 2019, Duron filed his Motion with the court.[32] In its entirety, Duron requests the following relief:

> I'm not trying to get exonerated from US. Gover[n]ment but [I] ask to get grant to review my case the guideline range is not enormous but it is meaningful and the range affected the sentence[] imposed, I just ask if my sentence can be reduce[d], or re-arrange[d] . . . thank you.[33]

---

[26] *Id.* at 3–4.

[27] *Id.* at 9.

[28] *Id.* at 7.

[29] 388 Case: dkt. 21, dkt. 22 at 2 ("The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 30 months custody of BOP, with credit for time served.").

[30] 413 Case: dkt. 14, dkt. 15 at 2 ("The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: 12 months and 1 day custody of the BOP, which shall run CONSECUTIVE to sentence imposed in case 2:18CR00388-001 RJS.").

[31] 413 Case: dkt. 14, dkt. 15 at 2.

[32] *See* dkt. 1.

[33] *Id.* at 12 (ellipses in original).

Duron did not provide any reasoning to support his requested relief.[34]

## ANALYSIS

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."[35]  "[C]onstru[ing] his [pro se] arguments liberally,"[36] as the court must, it appears Duron relies on 28 U.S.C. § 2255 to provide that statutory authorization.[37]

Under § 2255, the court may "vacate, set aside or correct" a federal prisoner's sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack."[38]  When a federal prisoner seeks relief under § 2255, he "generally must marshal all of [his] claims into one collateral attack on [his] conviction and sentence."[39]  Further, "[i]t is presumed that the proceedings leading to the conviction were correct . . . and the burden is on the petitioner to demonstrate" otherwise.[40]

---

[34] *Id.* at 4–10.

[35] *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997) (citation omitted).

[36] *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (citation omitted).

[37] *See* dkt. 1.

[38] 28 U.S.C. § 2255(a); *see also United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) ("[R]elief under § 2255 is generally confined to situations where (a) the convictions and sentences were entered by a court without jurisdiction, (b) the sentence imposed was outside of the statutory limits, (c) a constitutional error occurred, or (d) a non-constitutional error of law or an error of fact occurred that constituted a fundamental defect which inherently resulted in a complete miscarriage of justice, i.e., that rendered the entire proceeding irregular and invalid.") (citation, brackets, and quotation marks omitted).

[39] *United States v. Kelly*, 235 F.3d 1238, 1241 (10th Cir. 2000).

[40] *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citations omitted); *see also United States v. Morgan*, 346 U.S. 502, 512 (1954) ("It is presumed the proceedings were correct and the burden rests on the accused to show otherwise.") (citations omitted); *Bojorquez-Villalobos v. United States*, No. CV 13-728 JB/GBW, 2014 WL 12785108, at *2 (D. N.M. Nov. 4, 2014).

When addressing a motion brought under § 2255, the court is not required to hold a hearing or to notify the United States' attorney if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[41] Because the Motion, files, and records of this case conclusively show Duron is not entitled to the relief he requests, the court denies his motion without holding a hearing and without notifying the United States' attorney.

### A. Duron's Motion Does Not Implicate § 2255

Although Duron appears to allege that § 2255 supports his Motion, he does not advance any argument on any of the grounds § 2255 recognizes.[42] Where prisoners seek to challenge their incarceration but fail to identify any errors in their sentence, "§ 2255 is inapplicable."[43]

In *United States v. Anderson*, a prisoner moved a district court to reduce his sentence under § 2255 "because of a unique family situation."[44] The court denied the motion, and the prisoner appealed.[45] On appeal, the Tenth Circuit affirmed the district court's decision because the prisoner's argument relied on but did not actually implicate § 2255.[46] Specifically, the Circuit determined § 2255 was inapplicable because the prisoner never identified "flaws in his sentence" or "suggest[ed] his sentence was improper."[47] Because the prisoner failed "to allege

---

[41] *See* 28 U.S.C. § 2255(b) ("Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon . . . ."); *see also Fields*, 949 F.3d at 1246 ("The Supreme Court has interpreted this statutory language to mean that a hearing is unnecessary in those instances (a) where the issues raised by motion were conclusively determined either by the motion itself or by the files and records in the trial court, or (b) where the motion alleges circumstances of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.") (citation and quotation marks omitted).

[42] *See* dkt. 1.

[43] *See United States v. Anderson*, No. 96-1379, 1998 WL 8234, at *1 (10th Cir. Jan. 12, 1998) (unpublished).

[44] *Id.*

[45] *Id.*

[46] *Id.* at *1–2.

[47] *Id.* at *1.

any impropriety or error in the original sentence," § 2255 did not authorize the court to modify his sentence.[48]

The same is true here. Even construing Duron's arguments liberally,[49] he fails to identify any impropriety in his sentence[50] and merely "request[s] [the court] revisit the sentencing determination."[51] He does not argue any of the grounds in § 2255, instead asking the court to reduce his sentence only because "the guideline range is not enormous but it is meaningful and the range affected the sentence[] imposed."[52] But § 2255 does not authorize this court to adjust a sentence because "the guideline range" was "meaningful" and impacted the sentence. Accordingly, "§ 2255 is inapplicable," and the Motion is denied.[53]

## B. Duron Waived His Right to Challenge His Sentence

Even if § 2255 applied here, Duron waived his right to challenge his sentence on § 2255 grounds. "[A] waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made."[54] The Tenth Circuit applies a three-prong test to determine if a waiver of collateral attack rights brought under § 2255 is enforceable: (1) "whether the disputed claim falls within the scope of the waiver," (2) "whether the defendant knowingly and voluntarily waived his [§ 2255] rights," and (3) whether enforcing the waiver

---

[48] *Id.*

[49] Duron is proceeding pro se, and the court therefore "construe[s] his arguments liberally" but does not "serve as his advocate." *Pinson*, 584 F.3d at 975 (citation omitted).

[50] *See* dkt. 1.

[51] *Anderson*, 1998 WL 8234, at *1.

[52] Dkt. 1 at 12.

[53] *Anderson*, 1998 WL 8234, at *1.

[54] *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001).

7

would result in a miscarriage of justice."[55] Applying this test, the court concludes Duron waived his right to bring his Motion.

First, to determine the scope of the waiver, "the text of the plea agreement is our guide."[56] In reviewing the waiver, the court "strictly construe[s] the waiver and read[s] any ambiguities therein in favor of" Duron.[57] In the Plea Agreement, Duron represented the following:

> I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, and the manner in which the sentence is determined, in any collateral review motion . . . including . . . a motion brought under Title 28, United States Code, Section 2255, except on the basis of ineffective assistance of counsel."[58]

Duron's waiver unambiguously includes his right to challenge his sentence under any of the grounds identified in § 2255 except ineffective assistance of counsel. But nowhere in the Motion does Duron mention ineffective assistance of counsel.

Second, to determine whether Duron's waiver was "knowing and voluntary," the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily and [ ] look[s] for an adequate Federal Rule of Criminal Procedure 11 colloquy."[59] Additionally, Duron bears the burden to present evidence showing he did not knowingly and voluntarily waive his § 2255 rights,[60] which he has not done. Rather, the record demonstrates Duron knowingly and voluntarily waived his right to challenge the duration of his sentence under § 2255. Indeed, the waiver in the Plea Agreement begins with the

---

[55] *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citations omitted). Although this test is generally applied to the waiver of appellate rights, the Tenth Circuit has also applied it to waiver of rights under § 2255. *See Pinson*, 584 F.3d at 975.

[56] *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004) (citation omitted).

[57] *United States v. Akers*, 317 Fed. App'x. 798, 800 (10th Cir. 2009) (unpublished) (citation omitted).

[58] 388 Case: dkt. 25 at 4.

[59] *Akers*, 317 Fed. App'x. at 801 (citation and quotation marks omitted).

[60] *See United States v. Hahn*, 359 F.3d 1315, 1329 (10th Cir. 2004).

8

language, "I also knowingly, voluntarily, and expressly . . . ."[61] Duron was represented by counsel during the plea negotiations, reviewed the waiver with his counsel, and indicated in the Plea Agreement that he understood the waiver.[62] Duron's counsel also believed Duron "knowingly and voluntarily" entered into the Plea Agreement.[63] And before accepting Duron's plea, the court reviewed Duron's rights with him and received his verbal confirmation under oath that he understood and was voluntarily waiving those rights.[64]

Third, enforcing Duron's waiver will not result in a miscarriage of justice. A miscarriage of justice occurs "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful."[65] Duron also bears the burden on this issue,[66] and he has again failed to carry that burden because he never implicates any of these factors in his Motion. He never alleges the court relied on impermissible factors or that his counsel was ineffective. He also does not allege his sentence exceeded the statutory maximum or that the waiver is unlawful for any other reason.[67] Furthermore, the record clearly shows Duron's sentence is within statutory limits and the applicable Guideline range.

---

[61] 388 Case: dkt. 25 at 4.

[62] *Id.* at 1, 4, 6–7.

[63] *Id.* at 7.

[64] *See* 388 Case: dkt. 19; *see also* 413 Case: dkt. 14.

[65] *Akers*, 317 Fed. App'x. at 802 (brackets in original) (citation omitted).

[66] *Viera*, 674 F.3d at 1219.

[67] *See Hahn*, 359 F.3d at 1327 ("We further hold that to satisfy the fourth *Elliott* factor—where the waiver is otherwise unlawful—the error must seriously affect the fairness, integrity or public reputation of judicial proceedings, as that test was employed in *United States v. Olano*, 507 U.S. 725 . . . ." (brackets and quotation marks omitted).

In sum, except for a claim of ineffective assistance of counsel, Duron waived his right to challenge his sentence under § 2255. Thus, his Motion is denied.

### C. Denial of Certificate of Appealability

Because Duron's Motion has been denied, he may not appeal this decision without a certificate of appealability (COA).[68] A COA may issue "only if [Duron] has made a substantial showing of the denial of a constitutional right."[69] For claims rejected on their merits, this requires Duron to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[70] And for claims rejected on procedural grounds, Duron is required to demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[71] The court finds that Duron cannot satisfy either standard because no reasonable jurist could debate that Duron's Motion fails to implicate § 2255 or that Duron waived his right to bring his Motion. Accordingly, the court declines to issue a COA in this case.

## CONCLUSION

For the reasons explained above, Duron's Motion[72] is DENIED and this case is DISMISSED. Further, the court will not issue a COA in this case.

---

[68] 28 U.S.C. § 2253(c)(1)(B).

[69] *Id.* § 2253(c)(2).

[70] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[71] *Id.* (emphasis added).

[72] Dkt. 1.

10

SO ORDERED this 15th day of April 2020.

BY THE COURT:

_____
Robert J. Shelby
United States Chief District Judge